**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

MARCOS R. LOPEZ,

      Plaintiff,

v.                                            Case No: 6:17-cv-327-Orl-40GJK

RUSSELL GIBSON,

      Defendant.
_____/

## ORDER

This controversy arises out of Plaintiff Marcos R. Lopez's ("**Lopez**") campaign for Osceola County Sheriff in the November 2016 election. While blazing the campaign trail, Lopez's actions got him in hot water at work. As a result, he was demoted. Lopez then initiated this action against Defendant Russell Gibson ("**Sheriff Gibson**" or "**Defendant**"). Now before the Court are the parties' cross motions for summary judgment (Docs. 43, 44), responses (Docs. 48, 50), and a reply by Defendant (Doc. 52). With briefing complete, the matter is ripe. Upon consideration, Defendant Russell Gibson's Motion for Summary Judgment is due to be granted and Lopez's denied.

**I.    BACKGROUND[1]**

In 2003, Lopez was hired by the Osceola County Sheriff's Office ("**OCSO**") as a communications dispatcher. (Doc. 43-1, 18:20–22). Throughout the years, he moved up the OCSO ranks, culminating in his promotion to the rank of sergeant on June 6, 2016. (*Id.* at 28:21–30:19, 45:4–8). But Lopez had higher aspirations, and two days after his

---

[1] The parties generally agree as to the facts.

promotion, he launched a campaign for Osceola County Sheriff. (*Id.* at 46:11–14). Lopez's two primary election opponents were Dave Sklarek and Defendant Russell Gibson, (Doc. 43-11, 26:10–13), neither of whom were OCSO employees in June 2016.[2]

The campaign was immediately contentious. Lopez announced his candidacy for Sheriff on Facebook. (Doc. 43-1, 42:24–43:14, 46:11–14).[3] In response, two fellow OCSO officers—Sergeant John Pearce and Detective Albert Vazquez—made negative comments about his candidacy on Lopez's Facebook page. (*Id.* at 56:3–12, 68:1–9). The comments accused Lopez of, among other things, "[s]tealing cable" and publicizing a letter chiding the OCSO as racist for not promoting "a Spanish person." (*Id.*). Lopez responded by filing an internal report complaining about his co-workers' social media postings and accusing them of violating OCSO regulations. (*Id.* at pp. 196–99). After an initial inquiry, Captain Keith Parsons recommended an internal investigation be conducted. (*Id.* at p. 201).

Lieutenant Ryan Berry performed the investigation. (*Id.* at pp. 202–19). He found that Lopez's hands were not entirely clean and informed Lopez that the investigation included his Facebook posts. (*Id.* at 83:15–84:8, p. 212). Following the completion of the investigation and submission of Lt. Berry's report on September 23, 2016, Lopez received

---

[2] Gibson retired from his career with OCSO in December 2015 (Doc. 43-10, 5:17–19, 10:17–19), while Sklarek retired in May 2016. (*Id.* at 66:6–8).

[3] Lopez maintained two Facebook accounts during this period: a "community cop page" and a personal Facebook page. (Doc. 43-1, 51:1–11). The majority of Lopez's campaign-related postings were made from the community cop account. (*Id.* 51:9–11).

a written reprimand for his own Facebook posts. (*Id.* at p. 219).[4] Sgt. Pearce was also reprimanded, while Det. Vazquez was exonerated. (*Id.* at pp. 216–18).

Lopez's problematic Facebook activity wasn't over. On August 12, 2016, then-OCSO-Sheriff Robert Hansell ("**Sheriff Hansell**") received a report that Lopez publicly criticized the OCSO on his Facebook page, prompting a new investigation headed up by Sergeant Steve Moser ("**Sgt. Moser**"). (Doc. 43-2, pp. 1–3). Sgt. Moser's investigation found that Lopez posted[5] to his Facebook numerous posts and comments disparaging the OCSO.[6] The investigation also concluded that Lopez disobeyed Sheriff Hansell's directive prohibiting Lopez from wearing his uniform in campaign-related social media

---

[4] The posts leading to Lopez's reprimand were directed at Sgt. Pearce and stated:

> You are a Sergeant and a supervisor shame on you for being ignorant. What have I ever done to you but give you respect?
>
> I just received the first ignorant comment from a Sergeant [P]earce at the Osceola Sheriff's Office. He is upset that I am exercising my constitutional rights as a retired and disabled military veteran running for sheriff. Shame on him. I will not tolerate ignorance. Please refrain from negativity.

(*Id.* at pp. 210, 219). Lopez was reprimanded because the above-referenced comments violated Standard of Conduct § 341.0(4)(A)(41), which provides that "Members will be courteous and respectful to all agency members, and members of the public." (*Id.* at p. 219).

[5] Lopez disputes that he is responsible for all of the posts. According to Lopez, some of the messages were posted by his campaign manager, Ruben DeJesus. (Doc. 43-1, p. 64).

[6] For instance, Lopez referred to the OCSO as a "#riggedsystem," suggesting the OCSO was somehow unfair or manipulated. (Doc. 43-4, pp. 8, 12–13, 17–18, 21; Doc. 43-6, p. 46). Other posts implied that the Osceola County community did not trust, or have confidence in, the OCSO. (Doc. 43-4, p. 11; Doc. 43-6, pp. 41, 50, 94). These are just a few of the litany of negative messages Lopez posted regarding the OCSO. (*See* Docs. 43-4 through 43-7).

posts. (Doc. 43-1, 127:8–132:18). In light of his abrasive campaigning, Sgt. Moser concluded that Lopez violated three separate OCSO Standards of Conduct. (Doc. 43-2, pp. 25–26).[7] The subsequent Notice of Disciplinary Action recommended Lopez be punished with a demotion and a forty-hour suspension without pay. (*Id.* at pp. 33–34).

Lopez took up an appeal in front of the Career Service Appeals Board ("**CSAB**"), as afforded by Florida Law. Ch. 2000-388, Fla. Laws; *Leath v. Hansell*, No. 6:06-cv-896-Orl-19DAB, Doc. 39, p. 4 (M.D. Fla. Jan. 15, 2018). The CSAB panel was comprised of five panel members—two appointed by Sheriff Hansell, two appointed by Lopez, and the fifth selected by the other four panelists. *See* Ch. 2000-388, Laws of Florida; (Doc. 43-2, p. 36). The CSAB ultimately affirmed Lopez's demotion but overturned the forty-hour suspension. (Doc. 43-2, pp. 36–43). The CSAB's decision was final and binding on Lopez and the Sheriff. Ch. 2000-38, Laws of Florida. It appears Lopez did not appeal the CSAB's decision in Florida Circuit Court. Thus, in February 2017, Lopez was demoted to a deputy sheriff road patrol position with OCSO, where he remains employed. (Doc. 43-1, 41:3–11).

After all this, Lopez instituted this action against Sheriff Gibson[8] on February 24, 2017, asserting two counts under 42 U.S.C. § 1983 for violation of his First (Count I) and Fourteenth Amendment rights (Count II). (Doc. 1, pp. 15–18). The gist of Lopez's First

---

[7] Specifically, Lopez was cited for violating the OCSO Standards of Conduct: (1) proscribing untruthful public criticism of the OCSO, (2) requiring officers to obey OCSO directives, and (3) prohibiting officers from engaging in "unbecoming conduct." (*Id.*).

[8] Plaintiff's claims are directed at Sheriff Gibson who was the acting OCSO Sheriff when this action was filed. Sheriff Gibson became the Sheriff in January 2017. (Doc. 40-1, 23:11–13). Sheriff Hansell, meanwhile, served as Sheriff from 2005 until 2017. (Doc. 38-1, 9:18–22).

Amendment claim is that the campaign speech for which he was punished is protected by the First Amendment.

Defendant moves for summary judgment on both counts. (Doc. 43). Lopez opposes Defendant's motion as to his First Amendment claim, but "agrees that his equal protection claim can be dismissed." (Doc. 50). Lopez also moves for summary judgment as to several non-dispositive issues, including that Plaintiff has standing and that Lopez's Facebook posts constitute protected political speech. (Doc. 44).

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials" when resolving a motion for summary judgment. Fed. R. Civ. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam) (holding that a district court does not err by limiting its review to the evidence cited by the parties in their summary judgment briefs).

A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record

demonstrating the absence of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine factual disputes which preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). Summary judgment is proper when a plaintiff fails to adequately prove up an essential element of their claim. *Celotex*, 477 U.S. at 322–23.

## III. DISCUSSION

### A. Count I

Title 42, section 1983 vests individuals with a cause of action against the government and its agents to redress constitutional deprivations. A plaintiff suing a municipality[9] can recover under § 1983 if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Conversely, a municipality is never liable under the doctrine of *respondeat superior. Id.* A municipal official's decisions constitute "official municipal policy" where the official in question is "responsible for establishing final government policy respecting such activity." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–83 (1986); *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1292 (11th Cir. 2004) ("A

---

[9] Lopez presently only pursues the § 1983 claim for violation of his First Amendment rights against Russell Gibson in his official capacity as Sheriff of Osceola County, Florida. Suing a county official in his or her official capacity is "another way of pleading an action against an entity of which an officer is an agent." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

member or employee of a governing body is a final policy maker only if his decisions have legal effect without further action by the governing body, and if the governing body lacks the power to reverse the member or employee's decision." (citation omitted)). "[W]hether a particular official has 'final policymaking authority' is a question of state law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).

An official is not a final policymaker where his or her decisions are subject to "meaningful administrative review." *Scala v. City of Winter Park*, 116 F.3d 1396, 1401 (11th Cir. 1997). Generally, the existence of a reviewing body suffices to find that an official whose decisions are subject to review was not a final policymaker. *See, e.g.*, *Morro v. City of Birmingham*, 117 F.3d 508, 514 (11th Cir. 1997) (collecting cases). To counteract this, a plaintiff can show that an administrative review protocol is not meaningful by "show[ing] that the [appellate] board has defective procedures, merely 'rubber stamps' the official's decisions, or ratified the official's decision and improper motive." *Maschmeier v. Scott*, 269 F. App'x 941, 943 (11th Cir. 2008) (per curiam) (quoting *Quinn v. Monroe Cty.*, 330 F.3d 1320, 1326–27 (11th Cir. 2003)).[10]

Here, the issue is whether Sheriff Gibson is a final policymaker with respect to Lopez's demotion decision. It is Plaintiff's burden to establish this essential element. *Maschmeier*, 269 F. App'x at 944 n.4 (citing *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 636–37 (11th Cir. 1991)). Thus, if Defendant is not a final policymaker, Plaintiff's claims fail. *See Celotex*, 477 U.S. at 322–23.

---

[10] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

On review, the Court finds that Sheriff Gibson was not a final policymaker with respect to Lopez's demotion.[11] This is because the CSAB's review was meaningful and their decision final. Under the CSAB procedure prescribed by Florida law, Lopez handpicked two of the five panelists, had an opportunity to present his case and introduce evidence, and ultimately succeeded in overturning part of the discipline. Accordingly, CSAB's review easily meets the "meaningful administrative review" threshold, and Sheriff Gibson is not a final policymaker for municipal liability purposes. Lopez fails to show that the CSAB had defective procedures, "rubber-stamped" the Sheriff's decisions, or merely ratified the Sheriff's decisions and improper motive. *See Maschmeier*, 269 F. App'x at 943.

Lopez protests that the CSAB's review was not meaningful because its procedures were defective. First, Lopez argues that Sheriff Gibson has the exclusive authority to promote officers, and his failure to "correct the unconstitutional discipline" (by promoting Lopez to his pre-demotion position) renders Sheriff Gibson a final policymaker with respect to Lopez's demotion. (Doc. 50, p. 12). This argument fails because (1) the Complaint lacks a separate cause of action for Defendant's failure to re-promote Lopez,

---

[11] *See Leath v. Hansell*, No. 6:06-cv-896-Orl-19DAB, Doc. 39 (M.D. Fla. Jan. 15, 2018); *see also Scala*, 116 F.3d at 1398–99 (holding city manager was not final policymaker with regard to termination decisions that were reviewable by civil service board); *Manor*, 929 F.2d at 637–38 (holding that mayor was not final policymaker where his zoning decisions could have been overridden by city council); *cf. Mandel v. Doe*, 888 F.2d 783, 794 (11th Cir. 1989) (holding that a physician's assistant who "was authorized to function without any supervision or review at all" acted as a final policymaker with respect to unsupervised medical treatment rendered to prisoners).

and (2) the authority to promote does not bear on whether Sheriff Gibson had final policymaking authority with respect to demotion decisions.[12]

Next, Lopez argues that the CSAB proceeding lacked sufficient due process protections, and therefore did not provide "meaningful administrative review." (Doc. 50, pp. 12–15). Lopez, however, fails to cite caselaw supporting his contentions that a two-and-a-half-hour hearing is too brief to be meaningful, or that being denied counsel renders the proceeding "defective." These complaints are therefore insufficient to support the conclusion that the CSAB's review was not meaningful.

The Court likewise disagrees with Lopez's final point, that the denial of counsel and cross-examination at the CSAB hearing violate Florida law. Lopez complains that the CSAB's procedures failed to adhere to Florida Statutes § 30.076's due process guarantees. (Doc. 50, pp. 13–15). However, § 30.076 does not apply to Lopez's appeal of his demotion and suspension. Section 30.076(1) guarantees a deputy sheriff *facing termination*, among other things, the right to cross-examine witnesses testifying against them and the right to counsel at termination appeals hearings. Section 30.076(1) applies only to appeals of terminations, not demotions. Lopez attempts to bridge this gap by insisting that § 30.076 applies to terminations *of promotions* as well as normal terminations, relying on an unrelated subsection of another statute, § 30.073(3). (Doc. 50, p. 14). Lopez's importation of the broad "termination" definition from § 30.073(3) to avail

---

[12] *See Pembaur*, 475 U.S. at 482 ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."); *Leath*, No. 6:06-cv-896-Orl-19DAB, Doc. 39, p. 11 & n.12; (Doc. 1).

himself of § 30.076's robust due process guarantees defies basic statutory construction.[13] Therefore, Lopez's argument that the CSAB procedures violated his due process rights guaranteed by § 30.076 fails.

Finally, Lopez's cursory insinuation that the CSAB impermissibly ratified unconstitutional discipline is without merit. (Doc. 50, pp. 8, 10, 12). As noted above, administrative review is not meaningful where the administrative body simply "ratified the official's decision and improper motive." *Maschmeier*, 269 F. App'x at 943. Lopez cites no evidence showing that the CSAB approved the alleged improper basis for his discipline. (Doc. 50). Instead, the CSAB's published decision shows that the CSAB affirmed Lopez's demotion (and overturned his suspension) based on their considered review of witness testimony and evidence, and their ultimate conclusion that Lopez violated OCSO regulations. (Doc. 43-2, pp. 36–43).

In sum, the CSAB exercised "meaningful administrative review" over the OCSO Sheriff's discipline of Lopez. Though Lopez complains about perceived inadequacies of the CSAB procedure, the record is clear that Lopez's discipline was subject to satisfactory review.

Having found Sheriff Gibson is not a final policymaker with respect to Plaintiff's demotion, Plaintiff has failed to prove a basis for municipal liability as to Count I. Thus, Defendant Gibson is entitled to summary judgment on Count I. *See, e.g.*, *Scala*, 116 F.3d at 1403.

---

[13] *See Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1281 (11th Cir. 2015) ("Where the legislature has included a specific provision in one part of a statute and omitted it in another part, we must conclude that it knows how to say what it means, and its failure to do so is intentional." (quoting *Paragon Health Servs., Inc. v. Centr. Palm Beach Cmty. Mental Health Ctr., Inc.*, 859 So. 2d 1233, 1235 (Fla. 4th DCA 2003))).

### B. Count II

In his Response in Opposition to Defendant's Motion for Summary Judgment, Lopez indicates that he "agrees that his equal protection claim can be dismissed." (Doc. 50). The Court will therefore grant Defendant's summary judgment motion as to Count II.

### IV. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 43) is **GRANTED**. Judgment is granted in Defendant's favor as to Counts I and II.
2. Plaintiff's Motion for Summary Judgment (Doc. 44) is **DENIED**.
3. The Clerk of Court is **DIRECTED** to:
    a. Enter judgment in favor of Defendant Russell Gibson;
    b. Terminate any other pending motions and deadlines; and
    c. Close the file.

**DONE AND ORDERED** in Orlando, Florida on August 24, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties